## The Florence, El Dorado & Walnut Valley Railroad Company v. J. R. Ward.

1. INCOMPETENCY OF JUROR, *Deemed Waived; Practice in Supreme Court.* S., a juror, on his *voir dire* testified that he had been informed that the defendant had offered to confess judgment for a certain amount; and that from this and other information which he had received, he had formed an opinion in the case. The defendant challenged the juror for cause, and the court overruled the challenge. The jury were afterward impaneled and sworn, and the defendant did not exhaust all its peremptory challenges. Afterward the jury rendered a verdict in favor of the plaintiff and against the defendant, and the defendant moved for a new trial. On the hearing of this motion, it appeared from the oral testimony of the several jurors, that the said juror S. in the jury-room, and while the jury were deliberating upon their verdict, stated to the jury the amount for which he had understood the defendant offered to confess judgment, and also stated that the jury must find a verdict for an amount. greater than that amount, or that the plaintiff would have to pay the costs of the case. It appears, however, from the oral testimony of the several jurors, that this statement of the juror S. did not have any influence upon their verdict. *Held,* That the juror S. was probably an incompetent juror, and ought to have been discharged from the jury on the challenge of the defendant for cause; but that as the defendant did not exhaust all its peremptory challenges, the incompetency of the juror must be deemed to have been waived by the defendant; and that while the court might very properly have granted a new trial on the grounds of the incompetency, the prejudice and the misconduct of the juror S. and the previous failure on the part of the court to discharge him, yet that the supreme court cannot say, under all the circumstances of the case, that the court below committed material error in refusing to grant the new trial.

2. INCOMPETENT JURORS; *Practice.* A party should not be allowed to decline to exercise his peremptory challenges in discharging supposed incompetent jurors, and thereby to keep open the question as to their incompetency until after it is ascertained that the verdict is against him, and then allow him to again raise the question as to his competency. He should be compelled to use all reasonable means to discharge all objectionable jurors before the commencement of the trial; and the failure to do so must be considered as a waiver of all known objections. And afterward, if the juror should act as it might reasonably be supposed he would act under the circumstances, the party failing to remove him when he could so easily have done so, if he had so chosen, should not be allowed to complain.

3. ———— A claim of error, with reference to the refusal of the trial court to give sixteen separate instructions, considered, and held not tenable.

## Error from Butler District Court.

THE *Florence, El Dorado & Walnut Valley Railroad Company* sought to acquire a right of way for its railroad track over the lands of *Ward* and others, and procured the appointment of commissioners for that purpose. *Ward*, being dissatisfied with the amount of the award of damages allowed to him by the commissioners, appealed to the district court. At the March Term, 1882, the cause was tried before the court and a jury. Verdict and judgment in favor of *Ward*, for $1,050 and costs. The defendant brings the case here. The facts, and the errors complained of, appear in the opinion.

*Geo. R. Peck*, and *A. A. Hurd*, for plaintiff in error.

*A. L. Redden*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This action grows out of a condemnation proceeding instituted in Butler county by the Florence, El Dorado & Walnut Valley railroad company, to acquire a right-of-way for its railroad over the lands of J. R. Ward and others. Ward, being dissatisfied with the award of the commissioners, appealed to the district court of said county, by which appeal he became the plaintiff, and the railroad company became the defendant. The case was then tried before the court and a jury. The jury consisted of Robert F. Moore, R. H. Steele, Harry Jones, James Hughes, and others. In impaneling the jury the following proceedings, among others, were had:

R. H. STEELE, examined by plaintiff's attorney: Q. Have the facts, or what purported to be the facts, been related in your presence or hearing? A. Yes, sir; to a large extent. I have heard a great deal of the case.

Q. Have you heard what purported to be the facts of the damages the plaintiff has sustained? A. I have heard the circumstances of the land and the conditions through which the road ran through there, explained to me.

Q. When did you hear this? A. At different times.

Q. At or about the time of the trial of this case at the last term of court? A. No, sir.

Q. Subsequent, or prior? A. At the time the survey was made and the road was in course of construction.

Q. From what you have heard now, have you an opinion formed in your mind, or expressed, relative to the amount of damages the plaintiff ought to recover, or relative to any material issue in this case? A. As I have been informed, according to the knowledge I received of it, I believe I have formed an opinion in regard to the damages assessed by the examining board.

Q. Have you formed an opinion relative to the amount Ward ought to receive? A. I cannot say that I have.

Q. Can you now sit in this case and give a conscientious judgment in regard to the amount that Ward ought to receive, from the evidence you may hear in this case? A. As far as my judgment is concerned, I perhaps could to the best of my knowledge and belief.

Q. Without any reference to what you have heard before? A. Yes, sir.

R. H. STEELE, examined by defendant's attorney: Q. In what part of the country do you reside? A. In El Dorado.

Q. Are you acquainted with Ward? A. I know him by sight; that is about all.

Q. Are you acquainted with the location of his farm and how it is crossed by the railroad? A. Not from personal knowledge.

Q. You said you had expressed an opinion in regard to the compensation that Ward ought to receive. You have no opinion now in regard to the compensation that Ward should receive? A. I don't know that I have now, or ever had or expressed an opinion.

Q. Have you ever had any difficulty with the defendant railroad company? A. I think not; no, sir.

Q. Have you ever had any difficulty with the Atchison, Topeka & Santa Fé railroad company?

(Plaintiff objects, as immaterial and irrelevant. Objection overruled by court, the plaintiff at the time excepting.)

A. No, sir.

Q. Have you any feeling or prejudice against the defendant railroad company, or against railroad companies in general? A. Only as has been expressed by others. I think they have been exorbitant in their freight rates.

Q. Have you any feeling or prejudice agaist the defendant railroad company?   A. No, sir.

Q. Do you think your mind is in that condition that in the trial of this case you could give the defendant as fair a trial as though a private citizen of this county and one of your neighbors?   A. That is the condition I have aimed to be in.

Q. Do you think your feeling against railroad companies on account of high charges would influence you in fixing the amount of damages against this company?   A. I think not.

Q. Have you from Mr. Ward or others heard of a compromise having been made by the defendant railroad company to Mr. Ward in regard to this suit?

(Plaintiff objects as immaterial and irrelevant, which the court overrules, the plaintiff at the time excepting.)

A. Yes, sir; I have.

Q. In what you heard, was any amount stated?   A. It was.

Q. Did you, at the time you heard it, form any opinion as to whether that amount was more or less than Ward ought to receive?

(Plaintiff objects as immaterial, which objection the court overrules.)

A. I believe I did.

Q. Did you express that opinion?   A. I don't know that I did.

Q. Have you the same opinion now which you formed at the time you heard it?   A. I have heard nothing to change whatever it was.

Q. Is it such an opinion as would require evidence to change it?   A. I haven't formed an opinion but what I would base my opinion from the evidence produced in court.

Q. At the time you heard of the amount which had been offered, you did form an opinion as to whether it was too much or too little?   A. I think I did.

(Defendant's counsel challenge R. H. Steele for cause.)

By plaintiff's attorney to Steele: Can you, if sworn as a juror in this case, try it upon the evidence offered here, and conscientiously find a verdict without any reference to what you have heard before?   A. I think I can.

Q. Can you hear the evidence in this case and find a verdict the same as you would find it if it were a controversy between two persons?   A. I think I can.

(Plaintiff objects to defendant's challenge for cause.)

By the court to Steele: Have you any personal knowledge

of the matter in controversy in this case? A. No personal knowledge, only as I have heard from others.

Q. You are not acquainted with the land alleged to have been damaged in this case? A. I never saw it, and don't know the distance to it.

Q. Have you conversed with any person who assumed to have personal knowledge of the manner in which the particular land was crossed by the railroad and the extent to which it was damaged? A. I believe the ones I heard talk of it had personal knowledge; that is, I supposed they had.

Q. Is the opinion which you formed as to whether the sum which you heard had been offered by way of compromise was too great or too small — is that opinion based upon the conversation which you have had with these persons who assumed to know in what manner the land was damaged? A. It was based upon the description of the way in which the road crossed the land.

Q. Have you now in your mind a definite opinion as to the amount of damages which Ward has suffered by reason of his land being crossed by the railroad? A. No, sir.

Q. Did you ever have any definite opinion in your own mind as to the amount of damages that should be awarded him? A. I cannot say that I have.

The court overruled defendant's challenge for cause, to which ruling the defendant at the time excepted.

The jury found a general verdict in favor of the plaintiff and against the defendant, and assessed the amount of the damages at the sum of $1,050. The defendant then moved the court for a new trial upon various grounds, and among others, on the ground of misconduct on the part of the jury. The alleged misconduct was principally that of R. H. Steele. On the hearing of the motion for a new trial, the several jurors were examined orally with reference to certain matters occurring during their deliberations with reference to their verdict. A portion of their evidence is as follows:

HARRY JONES, called by defendant, having been duly sworn, testified as follows (direct examination by E. N. Smith):

Q. State if you were one of the jurors in the trial of this case at this term of court. A. I was.

Q. State whether or not Steele didn't make a statement

while you were deliberating upon your verdict, that the railroad company had offered Ward $1,000.    A.  He did.

Q.  I will ask you to state whether or not Steele, or any other member of the jury, didn't state that unless the award was more than what the defendant had offered, that Ward would have the costs to pay?    A.  I wouldn't be surprised that the question before this was answered wrong.    Steele didn't make that remark to the jury.    He made it to me; not to the jury.    I didn't mean to say he made the statement to the jury, but to myself.

Q.  Did you know of this statement before to-night, that the other witnesses have referred to, that he made up at the table?    A.  I remember of hearing the foreman, when somebody made a statement as to the amount offered, say that that must not be taken into consideration.    I don't remember who made the statement, or the amount; but the foreman said that is not for us to take into consideration; that we must not talk about it.    He put his ruling to vote, and it was sustained.

Q.  The statement you had reference to in your first answer was after that time, and made to you individually?    State how he came to make that statement to you.    A.  It was after breakfast, while we were in that little room.    The room has two tables, one upon the east side, and one upon the west; a stove in the north, and a door in the south.    I was sitting in my chair with my back nearly against the door, and Steele was at the east table leaning against the wall on the north side, and for the first time, he and I being perfect strangers, he motioned for me to come to him.    I went to him and he commenced talking about it was time to get together, and that we could not do anything while I, the stubborn man, stayed so low; that I must make a break.    There was little talk went on.    He said, "We must put it about $1,000, because, if you remember, I said, when questioned as a juror, that I had heard of the amount offered, and that amount, which I don't know as it is true, was $1,000; and if we come to a verdict at all, we have got to go above $1,000, in order to throw the costs upon the other party."    That was the only time I heard the amount mentioned.    It was by Steele, directed to me, and I didn't believe there was a man in the room heard our conversation.

Q.  State whether or not, in your opinion, if it had been understood that the offer had been $900, whether or not the jury would not as readily have agreed upon $950, or any amount less than $1,050.    A.  The jury never could have been brought to any verdict below $1,050, in my judgment.

(*Cross-examination.*)  Q. This conversation was after breakfast the next day following the trial?  A. Yes, sir.

Q. You had balloted a good many times?  A. Yes, sir.

Q. It was generally understood how you each individually stood?  A. Yes, sir.

Q. And you were the "low man?"  A. Yes, sir.

Q. Did the statement made to you by Steele influence your verdict?  A. No, sir.

Q. There was no one else heard it but you and Steele? A. I don't suppose that there was a man in the room knew what we were talking about. ·

Q. Most of the other jurors were pretty near together? A. Yes, sir.

Q. And were pretty well above $1,000?  A. Yes, sir; except two that were below $1,000.   The rest were $1,100 and above at that time, mostly above $1,100: eleven hundred and twelve hundred, as well as I remember now.

Q. I understood you to say you were satisfied they could not have been brought below $1,000, independent of any proposition *pro* or *con* by the railroad company?  A. No, sir, they could not.   I should never have entered into a verdict myself for less than for $500.   I should not have wanted to give $1,000, if I could help it.   My judgment was for $900. I don't think the jury would have been brought below their verdict by any means.

Q. Your object was to bring some of the extreme men down, that you took so low a figure?  A. I cast my vote for a lower amount than the verdict would have been if I had the casting of it alone.

Q. Did the statement of Steele influence your verdict in any way or form?  A. No, sir; and I don't think he made it with that intention.   He made it more to find out where I would come, in my own sense of honor and justice, and not to influence me wrongly.

JAMES HUGHES testified, among other things, that "Steele made the remark: 'I heard it said they tendered him $1,000.' As he made the remark, Moore was sitting there, and said: 'That had nothing to do with the case at all.'   And the rest of the jury indorsed Mr. Moore in what he said."

Robert F. Moore, however, in answer to the following questions, testified as follows:

Q. State if you heard any juror state, prior to the finding of your verdict and its announcement here in open court,

what amount the defendant had offered the plaintiff in compromise. A. I didn't.

Q. Did you know, prior to the finding of the verdict, what they had offered? A. No, sir.

Upon the foregoing evidence, these questions arise: 1. Was the juror Steele a competent and impartial juror? 2. Was he guilty of misconduct while the jury were deliberating upon their verdict?

The plaintiff claims that the juror was competent and impartial, and that he was not guilty of any misconduct; while the defendant claims the reverse. The plaintiff also claims that it was not proved as a fact that the railroad company ever offered to confess judgment, or ever mentioned any amount for which it was willing to confess judgment. Now so far as this case is concerned, we think it is wholly immaterial whether this last-mentioned claim of the plaintiff is correct or not; for the question is not whether the defendant offered to confess judgment for any amount, or not; but the questions really are, What did the jurors believe concerning this and other subjects? Were they impartial jurors? and Was there any misconduct? If the jurors believed that the defendant offered to confess judgment for $1,000, as it seems that Steele and some of the other jurors did, it would have precisely the same influence upon their minds, and the same effect upon their verdict, as though the railroad company had really made such an offer.

The plaintiff also claims that the defendant did not exhaust its peremptory challenges; that, at the time the jury were impaneled and sworn and the trial commenced, the defendant still had one peremptory challenge, which it might have exercised in discharging Steele from the jury if it had so chosen; but that it did not so choose, and therefore Steele remained a member of the jury. We have examined this claim of the plaintiff, and the claim seems to be correct. The record does not show that the defendant exercised more than two of its peremptory challenges, while, under the statutes, each party is entitled to three. (Civil Code, § 271.) This fact,

1. Incompetency of juror, deemed waived; practice in supreme court.

that the defendant did not exercise all its peremptory challenges, we think must have an important bearing in the case. It is our opinion that the juror Steele was not a fair and impartial juror, though his preconceived opinions in the case were not so manifestly prejudicial as to render him an unmistakably incompetent juror. It is also our opinion that he was guilty of unquestionable misconduct in acting as he did in the jury room, and while the jury were deliberating upon their verdict, but his misconduct was not so flagrantly wrong, or so manifestly prejudicial in its influences, as to make it clear that the verdict might have been affected thereby. And while we think that the court below should have discharged the juror Steele on account of his admitted opinions in the case, yet it is difficult for us to say that the court below committed material error in refusing to do so; and while we think that the court below might very properly have granted a new trial on the grounds of his prejudice and misconduct, and the previous failure on the part of the court to discharge him, yet it is difficult for us to say, under all the circumstances of the case, that the court below committed any material error in refusing to so grant such new trial. Parties are usually held to the strictest vigilance in impaneling juries, and generally if an improper person is allowed to remain on the jury through the fault or negligence or want of proper diligence on the part of any party, such party cannot complain. In the present case, the defendant knew that the juror Steele believed that the defendant had offered to confess judgment for a certain amount, and it knew that the juror believed that he knew what that amount was; and yet the defendant failed to challenge the juror peremptorily, although at the completion of the panel it still retained one of its peremptory challenges, unused and unexercised. We think, under such circumstances, it would be proper to hold that the defendant was willing to take the juror as he was, and to take the chances of his acting fairly and impartially in the case; and that if he did not do so with reference to the facts of which the defendant knew the juror had knowledge, the

defendant should not complain. A party should not be allowed to decline to exercise his peremptory challenges in 2. Incompetent discharging supposed incompetent jurors, and jurors; practice. thereby to keep the question open as to their incompetency until after it is ascertained that the verdict is against him, and then allow him to again raise the question as to competency. He should be compelled to use all reasonable means to discharge all objectionable jurors before the commencement of the trial; and the failure to do so must be considered as a waiver of all known objections. And afterward if the juror should act as it might reasonably be supposed he would act under the circumstances, the party failing to remove him, when he could so easily have done so if he had so chosen, should not be allowed to complain. In the present case, the incompetency of the juror was slight and not very clear, and his misconduct was also slight, and not necessarily prejudicial to the defendant's rights, and probably neither his incompetency nor his misconduct had any effect upon the verdict of the jury; but even if it had, it was partially the fault of the defendant in not removing him by one of its peremptory challenges. According to the testimony of the several jurors, nearly all of them were in favor of assessing the damages at from $1,100 to $1,200, instead of $1,050, as they finally did; and it seems almost certain that if the juror Steele had not said a word, the verdict would not have been any less than it was. Such seems to be the testimony of all the jurors, and their testimony was oral, and in the presence of the trial court. Hence we cannot say, under all the circumstances, that the court below committed material error in refusing to grant the defendant a new trial on the ground of the incompetency and misconduct of the juror Steele.

The plaintiff in error, defendant below, also claims that the court below erred in refusing to give sixteen separate instructions asked by the defendant below. All that the defendant says in this court with reference to these instructions is as follows: "Each of these instructions correctly states the law as applicable to the case, and it seems to us should have been

given to the jury by the court below." The substance of the most of them was given by the court to the jury in its general charge, and that portion which was not given we think was properly refused. Evidently the defendant, plaintiff in error, does not know of any particular portion of these instructions which should have been given, and which was not given, or it would have pointed out the same to this court. Presumably, from the brief of the defendant below, plaintiff in error, no error was committed by the court below in this respect, and we think that no such error was in fact committed. Presumably, from the brief of counsel, the defendant below does not rely upon this point. The judgment of the court below will be affirmed.

All the Justices concurring.